# In the United States Court of Federal Claims

No. 17-1446
Filed: November 20, 2018

*******************************************
* 
CHRISTOPHER P. LANGAN,       *
* 
     Plaintiff, *pro se*,      *
* 
v.      *
* 
THE UNITED STATES,      *
* 
     Defendant.      *
* 
*******************************************

**Christopher P. Langan,** Goshen, New York, Plaintiff, *pro se*.

**Andrew William Lamb**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

**MEMORANDUM OPINION AND ORDER GRANTING, IN PART, AND DENYING, IN PART, THE GOVERNMENT'S MOTION TO DISMISS AND, ALTERNATIVELY, FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

**BRADEN**, *Senior Judge*.

## I. Relevant Factual Background.[1]

### A. Plaintiff's Service Record.

Christopher P. Langan began service in the United States Air Force ("Air Force") on January 9, 2003. Compl. at 1. He was deployed to Afghanistan from September 25, 2010 to January 9, 2011 and thereafter "suffered from [a] variety of service-connected disabilities." Compl. at 19, 30.

---

[1] The facts recited herein are derived from: the October 18, 2017 Amended Complaint ("Compl."); appendices attached to the October 18, 2017 Amended Complaint, cited by ECF Number; the Administrative Record ("AR A1–A59"), filed as a portion of the appendix to the Government's February 23, 2018 Motion To Dismiss; and other attachments to the Government's February 23, 2018 Motion To Dismiss ("A60–A189").

At some point early in 2011, Christopher P. Langan, who by that time held the rank of Captain, and was stationed in Florida.  Compl. at 32.  He also was undergoing a divorce and arrested for cyber-stalking his wife.  Compl. at 32.

On February 18 and 24, 2011, Captain Langan had an encounter with his Squadron Commander.  Compl. at 19–20.

On February 24, 2011, at the request of his Squadron Commander, Captain Langan was examined by an Air Force physician, who reported that abnormalities were found in Captain Langan's brain during a magnetic resonance imaging scan.  Compl. at 19; *see also* ECF No. 11-2 at 23.

On February 28, 2011, the Air Force announced a new program to offer voluntary separation, with pay ("VSP").  Compl. at 19.

On March 9, 2011, an Air Force neurologist conducted a "[c]omplete evaluation" of Captain Langan and found "no evidence of multiple sclerosis" nor "symptoms referable to the central nervous system."  ECF No. 11-2 at 27.

On March 15, 2011, Captain Langan's Squadron Commander issued a letter of reprimand, that stated:

> On [the] 18[th] and 24[th of] February 2011[,] you acted in a manner unbecoming of an officer and a gentleman.  Your written and verbal communications to me were unprofessional, disrespectful, and insubordinate.  Furthermore, you exhibited disrespect and outright hostility towards me, and repeatedly questioned my intent, moral character, and truthfulness.

Compl. at 31; ECF No. 11-3 at 221.

On March 17, 2011, an Air Force physician approved of Captain Langan's return to duty.  Compl. at 20; *see also* ECF No. 11-2 at 29.

On March 18, 2011, Captain Langan's ex-wife filed for an injunction in the Santa Rosa County, Florida court contending that Captain Langan violated a domestic violence protective order.  Compl. at 32.  The petition, however, was "dismissed before trial."  Compl. at 32.

On March 24, 2011, Captain Langan's Group Commander also issued a letter of reprimand that criticized him for statements made about a service member's spouse's suicide and for trying to "gain access to federally protected documents," by using official letterhead.  Compl. at 33; ECF No. 11-3 at 226.  On March 24, 2011, Captain Langan submitted an application for VSP.  Compl. at 20; ECF No. 11-1 at 76.

On March 30, 2011, the Squadron Commander approved Captain Langan's application for VSP, and noted that "VSP is the perfect opportunity for Captain Langan to part ways with the Air Force and begin a new career path."  Compl. at 20.

On April 7, 2011, Captain Langan signed a letter of intent to participate in VSP, indicating that he planned to "get out of the Air Force as soon as possible." Compl. at 21–22.

On April 14, 2011, Captain Langan was arrested in Santa Rosa County for violating Fla. Stat. § 784.048.2, that prohibits willful, malicious, and repeat harassment or cyberstalking. Compl. at 33. The charges, however, were dismissed before trial. Compl. at 33. On April 18, 2011, Captain Langan's ex-wife filed a second complaint for a violation of the protective order or for the entry of a new protective order. Compl. at 34.

On April 25, 2011, an Air Force Commander referred Captain Langan for another mental health evaluation. ECF No. 11-2 at 33.

On May 2 and May 4, 2011, a clinical psychologist at Hurlburt Field Mental Health Clinic conducted a non-emergency mental health evaluation of Captain Langan. ECF No. 11-2 at 31. On May 9, 2011, that clinical psychologist recommended that Captain Langan be "returned to his Command," because he did "not appear to pose a physical danger to himself or to others." ECF No. 11-2 at 31–32. But, the clinical psychologist recommended against "reinstatement of [Captain Langan's] security clearance," and "recommended he not be assigned weapons bearing duties." ECF No. 11-2 at 32.

On May 10, 2011, the Air Force Central Registry Board found that Captain Langan's conduct towards his ex-wife "met the criteria for adult emotional maltreatment and entry into the [Department of Defense ("DoD")] Central Registry database." ECF No. 11-2 at 37.

On May 24, 2011, an Air Force Area Defense Counsel, assigned as Captain Langan's attorney in an unspecified matter, prepared a Memorandum For Reviewing Authorities that stated the prior Letters of Reprimand were "a career ender." ECF No. 11-3 at 236. The Memorandum also observed that Captain Langan's [Squadron] Commander would "like to involuntarily separate him prior to [October 1, 2011], but will be unable to do so." ECF No. 11-3 at 236.

Sometime in June 2011, Captain Langan was arrested for violating an unspecified court order. Compl. at 34.

On June 7, 2011, Captain Langan's ex-wife complained that he contacted her in violation of a protective order and caused his arrest for violating Fla. Stat. § 741.31.4a. Compl. at 34. This statute prohibits a willful violation of an injunction issued to prevent domestic violence. Compl. at 34. This charge also was dismissed before trial. Compl. at 34.

On June 11, 2011, Captain Langan's "security clearance was suspended." Compl. at 22; ECF No. 11-3 at 238. On July 6, 2011, an Air Force Security Officer revoked Captain Langan's security clearance. Compl. at 22, 34.

On July 12, 2011, Captain Langan's ex-wife accused him of "using her likeness." Compl. at 34. The police arrested him for violating Fla. Stat. § 817.568.2a, that prohibits identity theft. Compl. at 35. This charge also was dismissed before trial. Compl. at 34.

On July 19, 2011, the Air Force approved Captain Langan's application for VSP. AR A55.

In August 2011, Captain Langan filed a complaint with the Air Force Inspector General, alleging that he was harassed and subjected to retaliation. Compl. at 2.

On August 12, 2011, the Air Force approved Captain Langan's application to take 45.5 days of "excess leave"[2] from August 17, 2011 to October 1, 2011. Compl. at 22. Subsequently, Captain Langan claimed that he filed that application, "under duress or at least undue influence." Compl. at 43.

On October 1, 2011, Captain Langan was separated from the Air Force, with an honorable discharge. Compl. at 2, 31.

On November 7, 2011, a Defense Finance and Accounting Service ("DFAS") Financial Service Office sent former Captain Langan $52,886.58; on November 8, 2011, a different DFAS Financial Service Office sent him $38,000.00. AR A26.

**B.      Plaintiff's Post Service Record.**

In February 2012, former Captain Langan's ex-wife filed a criminal complaint in a New York court, alleging that he threatened her life. Compl. at 36. On May 23, 2012, former Captain Langan was arrested for violating N.Y. Stat. § 215.51(b)(iii), prohibiting conduct that places a person, subject to a protective order, in reasonable fear of physical injury or death. Compl. at 36.

On February 16, 2012, former Captain Langan was arrested in California, for driving under the influence of alcohol, and sentenced to "a work program" and "substance abuse counseling for [nine] months." Compl. at 36.

On March 21, 2012, the DFAS sent former Captain Langan a bill for $41,729.66. ECF No. 11-1 at 342.

On July 24, 2012, the United States Department of the Treasury ("Treasury") notified former Captain Langan that he owed the DFAS money on an outstanding debt. ECF No. 11-1 at 344. On October 24, 2012, the IRS sent a 2011 federal income tax refund due former Captain Langan to the DFAS as an offset to that debt. Compl. at 23.

On August 30, 2012, former Captain Langan filed two *pro se* Applications For Correction Of Military Record with the Air Force Board for the Correction of Military Records ("BCMR"). AR A8–A29; A30–A52. The first August 30, 2012 Application requests that the BCMR correct his record to show that he has no outstanding debt to DFAS, because it allegedly overpaid VSP.

---

[2] "Excess leave" is "leave members normally use for personal or family emergency situations when members can not [sic] request advance leave. Excess leave is a no-pay status; therefore, authority for pay and allowances and leave accrual stops on member's first day of excess leave." Air Force Instruction 36-3003, § 6.8 (Oct. 26, 2009).

AR A11.  The second August 30, 2012 Application requests that the BCMR treat the "excess leave" that he took in August and September of 2011, as "permissive leave."  AR A33.[3]

A year later, on August 1, 2013, the United States Department of Veterans Affairs ("VA") made an initial determination that former Captain Langan was ninety percent disabled.  Compl. at 24; ECF No. 11-2 at 51.

On August 5, 2013, the IRS informed former Captain Langan that his 2011 income taxes "were incorrectly filed."  Compl. at 24.

On October 29, 2013, the BCMR denied both of former Captain Langan's August 30, 2012 Applications, because "[i]nsufficient relevant evidence has been presented to demonstrate the existence of an error or injustice."  AR A6.  As to former Captain Langan's claim that his VSP was calculated incorrectly, the BCMR found that the "DFAS has adequately addressed this [allegation] in their evaluation of the case."  AR A6.  As to former Captain Langan's claim that he should have been paid for excess leave, the BCMR found that he had "not provided substantial evidence to warrant reimbursement."  AR A6.

On November 6, 2013, the BCMR sent former Captain Langan a letter providing notice of the October 29, 2013 denial.  AR A2.

On June 3, 2014, former Captain Langan filed a Complaint In Nature Of Mandamus in the United States District Court for the Northern District of California ("District Court"), raising nearly identical claims to those alleged in this case.  *See Langan v. United States*, No. 14-2563, 2014 WL 4954667 (N.D. Cal. Oct. 2, 2014).

On July 18, 2014, the VA made a second determination that former Captain Langan was one-hundred percent disabled.  Compl. at 25; ECF No. 11-2 at 59.

On August 15, 2014, the BCMR denied former Captain Langan's repeated attempts to appeal the October 29, 2013 decision.  Compl. at 25.

On August 28, 2014, the Social Security Administration's Office of Disability Adjudication and Review determined that Captain Langan continuously was disabled starting on January 10, 2011.  ECF No. 11-2 at 67.

---

[3] During an audit sometime in 2012, the DFAS found two "mistakes" in its calculation of former Captain Langan's VSP.  AR A26.  First, former Captain Langan was paid VSP for the time he was on "excess leave" during August and September 2011.  AR A26.  The DFAS calculated that he was paid $4,186.66 for those months; instead, he should have been paid $351.69.  AR A26. Second, former Captain Langan was paid for six days he spent in jail.  A62 (*i.e.*, April 13, 2011 to April 14, 2011; June 6, 2011 to June 7, 2011; and June 14, 2011 to June 15, 2011).  Specifically, the DFAS calculated that the amount of pay due for those six days was $1,398.56.  A65.

On October 2, 2014, the District Court dismissed former Captain Langan's June 3, 2014 Complaint "without prejudice to [former Captain] Langan filing an action under the Tucker Act in the [United States] Court of Federal Claims based on the same underlying allegations." *Id.* at *5.

On October 7, 2014, the IRS placed a taxpayer levy on former Captain Langan's bank accounts. Compl. at 26.

On November 14, 2014, the Air Force Inspector General issued a decision finding that former Captain Langan's August 2011 complaint was "not substantiated." ECF No. 11-1 at 4.

On December 23, 2014, the VA released a final decision, finding that former Captain Langan was one-hundred percent disabled. Compl. at 27. On March 5, 2015, the VA made the December 23, 2014 decision public. Compl. at 27; ECF No. 11-3 at 3–6.

On January 16, 2015, the District Court entered judgment for the United States, because former Captain Langan missed a filing deadline and failed to attend a case management conference. No. 14-2563, ECF No. 16. That same day, the District Court entered an Order "without prejudice to [former Captain Langan] filing a new complaint in a court of competent jurisdiction." No. 14-2563, ECF No. 16 at 1.

On February 21, 2017, former Captain Langan submitted a request for a tax/penalty adjustment to the IRS, that stated: (1) his 1040 (2011) "was erroneously charged by [the] IRS to add net income of $5,850 based on a retirement distribution [that] . . . should not have been taxed . . . until 2012[,] because [former Captain Langan] didn't get the 1099 until October 2012;" and (2) his 1040 (2011) "refund of $17,786.00 was illegally taken by [the] IRS through [the Treasury Offset Program ("TOP")[4]] and given to [the] DFAS for a disputed debt." ECF No. 11-3 at 212.

On May 16, 2017, the IRS sent former Captain Langan a denial letter that explained, the "taxable year for income is based on when the income is paid," not when a taxpayer receives a 1099. ECF No. 11-3 at 212. That letter also instructed former Captain Langan to contact the DFAS about the dispute over VSP and directed his attention to Treasury Regulation 301.6402-6(l).[5] ECF No. 11-3 at 212. Although Treasury Regulation 301.6402-6(l) prohibits "review by

---

[4] The Treasury Offset Program is "a centralized offset program, administered by the Bureau of the Fiscal Service's Debt Management Services (DMS), to collect delinquent debts owed to federal agencies and states (including past-due child support), in accordance with 26 U.S.C. § 6402(d) (collection of debts owed to federal agencies), 31 U.S.C. § 3720A (reduction of tax refund by amount of the debts), and other applicable laws." *Treasury Offset Program (TOP)*, Bureau of the Fiscal Service, U.S. Department of the Treasury (last visited November 9, 2018), *available at* https://fiscal.treasury.gov/fsservices/gov/debtColl/dms/top/debt_top.htm.

[5] That regulation states:

> Review of offset of refunds. Any reduction of a taxpayer's refund made pursuant to section 6402(c) or (d) *shall not be subject to review by any court* of the United States or by the Service in an administrative proceeding. No action brought against the United States to recover the amount of this reduction shall be considered to

any court," the May 16, 2017 denial letter—in form language—instructed former Captain Langan that he may file a claim for refund: "You will have two years from the date of the notice of disallowance to bring suit in the United States District Court having jurisdiction or in the United States Claims Court."  ECF No. 11-3 at 214.

## II.   Procedural History.

On October 2, 2017, former Captain Langan ("Plaintiff") filed a Complaint in the United States Court of Federal Claims designating, as defendants, the United States ("the Government"), several federal agencies, and more than a dozen named and unnamed individuals.  ECF No. 1.  On October 2, 2017, Plaintiff also filed a Motion For Leave To Proceed *In Forma Pauperis* and a Motion To File Electronically.  ECF Nos. 5, 6.  On October 16, 2017, Plaintiff filed a Motion For Leave To File Amended Complaint.  ECF No. 8.  On October 17, 2017, the court granted each of Plaintiff's motions.  ECF No. 9.

On October 18, 2017, Plaintiff filed an Amended Complaint that alleges three monetary claims: (1) money the DFAS owes Plaintiff for his military service and his participation in VSP; (2) money the IRS owes Plaintiff due to incorrect amounts withheld for federal taxes; and (3) military disability retirement pay pursuant to the Career Compensation Act, 10 U.S.C. § 1201. ECF No. 11 at 12, 37–64, 68–82.  The Amended Complaint also alleges violations of the Military Whistleblower Protection Act ("MWPA"), 10 U.S.C. § 1034, by personnel who retaliated against Plaintiff for communicating with the Air Force Inspector General.  Compl. at 64–68.

Plaintiff's October 18, 2017 Amended Complaint requests:

- $4,086.90 per month in military disability retirement pay, that includes $294,256.80 on pay retroactive to October 1, 2011;
- $11,093.17 for taxes withheld;
- an injunction ordering the Air Force to award Plaintiff several medals for distinguished service;
- $17,786.00 for taxes paid on his VSP payments;
- $1,067.42 from the IRS for issuing an incorrect 1099-R;
- $413.00 in costs related to Plaintiff's IRS administrative claim;
- $8,766.00 for a "substance allowance . . . from May 3, 2013 to August 3, 2013;"
- $1,071.47 for Post 9-11 GI Bill debts;
- an injunction ordering the Government to show Plaintiff's debts as "paid in full;"

---

be a suit for refund of tax.  Any legal, equitable, or administrative action by any person seeking to recover the amount of the reduction of the overpayment must be taken against the Federal agency to which the amount of the reduction was paid.  Any action which is otherwise available with respect to recoveries of overpayments of benefits under section 204 of the Social Security Act must be taken against the Secretary of Health and Human Services.

26 C.F.R. § 301.6402-6 (emphasis added).

- reimbursement for legal and medical costs;
- GI Bill payments to Plaintiff's minor child; and
- costs and fees.

Compl. at 85–91.

On February 23, 2018, the Government filed a Motion For Dismissal And, Alternatively, For Judgment On The Administrative Record ("Gov't Mot."). ECF No. 17. The Government also submitted a certified copy of the Administrative Record, including Plaintiff's August 30, 2012 Applications to the BCMR. ECF No. 17-1.

On June 22, 2018, Plaintiff filed a Response ("Pl. Resp."). ECF No. 23. On June 25, 2018, Plaintiff filed an Unopposed Motion To Correct Plaintiff's Omission Of Appendix "D." ECF No. 24. That same day, the court granted Plaintiff's Motion to Correct. ECF No. 25.

On July 23, 2018, the Government filed a Reply ("Gov't Reply"). ECF No. 29.

On July 25, 2018, Plaintiff filed a Motion For Leave To File A Sur-Reply. ECF No. 30. On July 27, 2018, the Government opposed the July 25, 2018 Motion. ECF No. 31. On August 3, 2018, the court granted Plaintiff's Motion For Leave To File A Sur-Reply and directed it to be filed on or before August 10, 2018. ECF No. 32. On August 10, 2018, Plaintiff filed a Sur-Reply. ECF No. 33.

## III.   Discussion.

### A.   Subject Matter Jurisdiction.

Subject matter jurisdiction is a threshold issue that a court must determine at the outset of a case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter 'spring[s]' from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'") (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)).

The Tucker Act authorizes the United States Court of Federal Claims with jurisdiction to adjudicate "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act does not "create[] substantive rights." *United States v. Navajo Nation*, 556 U.S. 287, 290 (2009). Instead, the Tucker Act is a "jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law (*e.g.*, statutes or contracts)." *Id.* "The other source of law need not explicitly provide that the right or duty it creates is enforceable through a suit for damages, but it triggers liability only if it 'can fairly be interpreted as mandating compensation by the Federal Government.'" *Id.* at 1552 (quoting *United States v. Testan*, 424 U.S. 392, 400 (1976)). "This 'fair interpretation' rule demands a showing demonstrably lower than the standard for the initial waiver of sovereign immunity." *Holmes v. United States*, 657 F.3d 1303, 1309 (Fed. Cir. 2011) (citations omitted).

The United States Court of Federal Claims has jurisdiction to entertain tax refund claims under the Tucker Act. *See Hinck v. United States*, 64 Fed. Cl. 71, 74–76 (Fed. Cl. 2005) (explaining that the court's tax refund jurisdiction is derived from the Tucker Act), *aff'd*, 446 F.3d 1307 (Fed. Cir. 2006), *aff'd*, 550 U.S. 501 (2007). The jurisdictional requirements for maintaining a tax refund suit in the United States Court of Federal Claims are the same as the requirements for maintaining a tax refund suit in a United States district court, *i.e.*, filing an administrative claim for refund before filing a tax refund claim, and complying with applicable statutory time limits. *See United States v. Clintwood Elkhorn Min. Co.*, 553 U.S. 1, 4 (2008).

The court addresses whether it has subject matter jurisdiction to adjudicate each of the claims alleged in the October 18, 2017 Amended Complaint at Section III.E, *infra*.

## B.     Standing.

The United States Court of Federal Claims, although an Article I court, "applies the same standing requirements enforced by other federal courts created under Article III." *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009). Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." *Bank of Am. Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296, 1302 (2017). To demonstrate the existence of a case or controversy, a plaintiff must show "an 'injury in fact' that is 'fairly traceable' to the defendant's conduct and 'that is likely to be redressed by a favorable judicial decision.'" *Id.* (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)).

The October 18, 2017 Amended Complaint alleges that the Air Force did not pay Plaintiff all of the monetary compensation due for his years of service. Compl. at 37–64, 68–82. Therefore, the October 18, 2018 Amended Complaint alleges an injury in fact traceable to the challenged Air Force activities that can be redressed by a favorable decision. *See Pittman v. United States*, 135 Fed. Cl. 507, 522 (Fed. Cl. 2017) (determining that a retired service member had standing, because "a favorable decision by the court would allow Plaintiff to recover that back pay owed").

For these reasons, the court has determined that Plaintiff has standing to seek an adjudication of the claims alleged in the October 18, 2017 Amended Complaint.

## C.     Standards of Review.

Rule 12(b)(1) of the United States Court of Federal Claims authorizes a party to file a motion asserting a "lack of subject-matter jurisdiction." RCFC 12(b)(1). "In deciding a motion to dismiss for lack of subject matter jurisdiction, the court accepts as true all uncontroverted factual allegations in the complaint, and construes them in the light most favorable to the plaintiff." *Stephens v. United States*, 884 F.3d 1151, 1155 (Fed. Cir. 2018) (citations omitted).

Rule 12(b)(6) of the United States Court of Federal Claims authorizes a party to file a motion asserting a "failure to state a claim upon which relief can be granted." RCFC 12(b)(6). "To survive a Rule 12(b)(6) motion, [a] complaint must allege facts plausibly suggesting (not merely consistent with) a showing of entitlement to relief." *Harris v. United States*, 868 F.3d 1376, 1379 (Fed. Cir. 2017) (citations omitted). And, as with Rule 12(b)(1), the court must "accept all well-pleaded factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Id.*

Rule 52.1 of the United States Court of Federal Claims authorizes a party to file a motion for "judgment on the administrative record." RCFC 52.1(c)(1). "In deciding these motions, the court considers 'whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record.'" *Palantir USG, Inc. v. United States*, No. 2017-1465, 2018 WL 4356686, at *6 (Fed. Cir. Sept. 7, 2018) (quoting *A & D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (Fed. Cl. 2006)).

It has been the tradition of this court to "interpret [a] *pro se* complaint liberally." *Sause v. Bauer*, 138 S. Ct. 2561, 2563 (2018). A *pro se* plaintiff, however, "must still meet minimal [jurisdictional] standards to avoid dismissal." *Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1141 (Fed. Cir. 2018).

### D.   The Government's February 23, 2018 Motion For Dismissal And, Alternatively, For Judgment On The Administrative Record.

#### 1.   The Government's Argument.

The Government argues that the United States Court of Federal Claims does not have jurisdiction to adjudicate claims against any defendant other than the United States. Gov't Mot. at 26.

Regarding other substantive claims alleged in the October 18, 2018 Amended Complaint, the Government contends that the court does not have jurisdiction to adjudicate discrimination or civil rights claims, including claims filed, pursuant to the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4311 ("USERRA"). Gov't Mot. at 26–27. In addition, the court does not have jurisdiction to adjudicate Plaintiff's claim that he should have been retired with disability pay, because Plaintiff did not first present that claim to a military board. Gov't Mot. at 27–28. And, because the court does not have jurisdiction to adjudicate Plaintiff's disability retirement claim, it also does not have jurisdiction to adjudicate Plaintiff's claim that the federal income taxes assessed on VSP payments were miscalculated and improperly withheld. Gov't Mot. at 28. The court also does not have jurisdiction to adjudicate Plaintiff's claim concerning the MWPA, because that statute is not money-mandating. Gov't Mot. at 28–29. Nor does the court have jurisdiction to adjudicate Plaintiff's tort claims. Gov't Mot. at 29. Likewise, the court does not have jurisdiction to adjudicate "claims for equitable relief," *i.e.*, that Plaintiff should be awarded several military medals and removed from the DoD Central Registry database. Gov't Mot. at 29–30.

In the alternative, the October 18, 2017 Amended Complaint fails to state a claim on which relief can be granted. Gov't Mot. at 31. First, Plaintiff is not entitled to a declaratory judgment, because his debt to the DFAS has not been paid. Gov't Mot. at 32. Second, Plaintiff's discrimination allegation is "conclusory." Gov't Mot. at 33. Third, Plaintiff is not entitled to an adjustment in the VSP, because the amount he received correctly was calculated under governing regulations. Gov't Mot. at 34–36. Fourth, Plaintiff's other tax refund claims do not state a claim, for the reasons identified in the IRS's May 16, 2017 decision. Gov't Mot. at 36–37. Fifth, Plaintiff is not entitled to back pay for time spent in jail or for "excess leave." Gov't Mot. at 38–39.

Finally, the BCMR's November 6, 2013 decision is supported by substantial evidence and addresses the remaining claims in Plaintiff's October 18, 2017 Amended Complaint. Gov't Mot.

at 41.  Accordingly, the court should enter judgment for the Government on the Administrative Record.  Gov't Mot. at 40–41.

### 2.    Plaintiff's Response.

Plaintiff responds that the DFAS never explained how Plaintiff's debt was calculated.  Pl. Resp. at 18.  Plaintiff's term of service in the Air Force was eight years, eight months, and 23 days. Pl. Resp. at 18.  But, the DFAS mistakenly used the formula applicable to Voluntary Separation Incentive, instead of VSP.  Pl. Resp. at 20, 23.  The DFAS also should not have reduced Plaintiff's pay for days he spent in prison, because he was never convicted.  Pl. Resp. at 30, 50.  Likewise, the DFAS should not have reduced Plaintiff's pay for "excess leave," because Plaintiff requested that leave "to go to law school."  Pl. Resp. at 28.  And, the DFAS failed to credit Plaintiff for 16 days of accrued leave.  Pl. Resp. at 37.

In addition, the Air Force owes Plaintiff $1,130.48 for a travel voucher that was not paid in full; $292.96 for moving expenses; and $1,400.00 in personal property lost or damaged by movers.  Pl. Resp. at 52–53.

The DFAS also erred in not issuing Plaintiff a Form 1099-R to submit with his 2011 tax return, because that form was necessary to show that he was entitled to a refund of $17,709.90, the total amount withheld from Plaintiff's VSP.  Pl. Resp. at 55.  Finally, Plaintiff is entitled to disability pay retroactive to the date of his separation from the Air Force, because Plaintiff was found by the Social Security Administration's Office of Disability Adjudication and Review to be "100% disabled," as of October 1, 2011.  Pl. Resp. at 60.

### 3.    The Government's Reply.

The Government replies that Plaintiff failed to raise any argument about disability compensation before the BCMR, so the court does not have jurisdiction to adjudicate the merits of this claim.  Gov't Reply at 4.  The court also does not have jurisdiction to adjudicate Plaintiff's claim for a VSP tax refund, because that claim "depends on a claim over which there is no jurisdiction," *i.e.*, the disability compensation claim.  Gov't Reply at 5.  Additionally, the court does not have jurisdiction to adjudicate MWPA, tort, or equitable claims.  Gov't Reply at 5–6.

In the alternative, the October 18, 2017 Amended Complaint does not state a plausible claim for disability retirement compensation, because "[m]edical exams before separation did not find [Plaintiff] unfit."  Gov't Reply at 9.  Air Force regulations require that VSP be calculated using full months of service, not fractional parts of a month.  Gov't Reply at 10.  Nor does VSP cover incidental expenses such as property damage caused by movers or the failure of Air Force personnel to return Plaintiff's handgun that was seized when he was in prison.  Gov't Reply at 13.

As for Plaintiff's argument that he is entitled to "ordinary leave," rather than "permissive leave," this is a new claim that is not alleged in the October 18, 2017 Amended Complaint. *Compare* Pl. Resp. at 33–41 *with* ECF No. 11 (Compl.).  In sum, Plaintiff's claims for paid "excess leave" and back pay for jail time served are conclusory, as is the claim that Plaintiff suffered retaliation for complaining to the Air Force Inspector General.  Gov't Reply at 16–17.

### 4. Plaintiff's Sur-Reply.

Plaintiff adds that the DFAS never provided him with a "complete description of the nature of his indebtedness." Pl. Sur-Reply at 1–3 (citations omitted). Nevertheless, the court has jurisdiction to adjudicate Plaintiff's claim for disability retirement pay, because he "mention[ed] he is disabled" in his application to the BCMR. Pl. Sur-Reply at 8. The court also has jurisdiction to adjudicate Plaintiff's tax refund claim regarding the improper withholding of VSP. Pl. Sur-Reply at 9–11. In addition, the DFAS incorrectly calculated Plaintiff's retirement pay. Pl. Sur-Reply at 18.

### E. The Court's Resolution.

### 1. Whether The Court Has Jurisdiction To Adjudicate The Claims Alleged In Plaintiff's October 18, 2017 Amended Complaint.

#### a. Plaintiff's Claims Against Defendants Other Than The United States.

The United States Court of Federal Claims does not have jurisdiction to adjudicate alleged claims against parties, other than the United States. *See* 28 U.S.C. § 1491(1)(a) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States[.]"). Plaintiff's October 18, 2017 Amended Complaint identifies as defendants several dozen named and unnamed individuals and agencies. Compl. at 28–30.

For this reason, the court has determined that all claims alleged in the October 18, 2017 Amended Complaint against any defendant that is not the United States must be dismissed. *See* RCFC 12(b)(1).

#### b. Plaintiff's Claim That He Is Entitled To Disability Retirement Pay.

The United States Court of Appeals for the Federal Circuit has held that the Career Compensation Act, 10 U.S.C. § 1201, is "money-mandating." *Fisher v. United States*, 402 F.3d 1167, 1174 (Fed. Cir. 2005). That statute authorizes the Secretary of Defense to "retire," with pay, a service member who is "unfit to perform [his] duties[,] . . . because of physical disability." 10 U.S.C. § 1201(a). Because the Career Compensation Act vests initial decision making authority with the Secretary of Defense, the United States Court of Appeals for the Federal Circuit has held that "claims of entitlement to disability retirement pay generally do not accrue until the appropriate military board either finally denies such a claim or refuses to hear it." *Chambers v. United States*, 417 F.3d 1218, 1224 (Fed. Cir. 2005); *see also id.* at 1223 (treating this rule as "jurisdiction[al]").

In this case, the October 18, 2017 Amended Complaint did not allege that Plaintiff submitted a claim for disability retirement pay to the BCMR. Compl. at 1–94. Nor did the BCMR issue a decision on any such claim. AR A3–A7. Plaintiff's August 10, 2018 Sur-Reply argued that Plaintiff's application to the BCMR stated that he "is disabled." Pl. Sur-Reply at 8. It is true that Plaintiff's two August 30, 2012 BCMR Applications (AR A8–A29, AR A30–A52) state that Plaintiff was a "disabled veteran," but the BCMR did not have sufficient evidence to render Plaintiff any relief on that basis. The Social Security Administration's Office of Disability

Adjudication and Review did not find that Plaintiff "has been disabled as of January 10, 2011" until August 28, 2014.  The United States Court of Appeals for the Federal Circuit recently held that "an implied submission for benefits" is not enough to satisfy *Chambers*.  *See Evans v. United States*, No. 2017-2319, 2018 WL 4145864, at *3 (Fed. Cir. Aug. 29, 2018); *see also Chambers*, 417 F.3d at 1227 (holding that the BCMR is "the first competent board" to evaluate a disability retirement claim).

For these reasons, the court has determined that it does not have jurisdiction to adjudicate the claim alleged in the October 18, 2017 Amended Complaint, at 50–53, that Plaintiff should have been retired, with disability pay.  Accordingly, this claim must be dismissed.  *See* RCFC 12(b)(1). Plaintiff, however, should file a claim with the BCMR for a new determination, and submit the August 28, 2014 finding discussed above.

### c.      Plaintiff's Claim Of Whistleblower Retaliation.

The United States Court of Federal Claims does not have jurisdiction to adjudicate claims filed pursuant to the MWPA, because that statute is not "money-mandating."  *Rana v. United States*, 664 F. App'x 943, 948 (Fed. Cir. 2016).

For this reason, the court has determined that it does not have jurisdiction to adjudicate the claim alleged in the October 18, 2017 Amended Complaint, at 64–65, that the Government violated the MWPA by retaliating against Plaintiff for communicating with the Air Force Inspector General.  Accordingly, this claim must be dismissed.  *See* RCFC 12(b)(1).

### d.      Plaintiff's Claim Of Discrimination In Violation Of The Uniformed Services Employment And Reemployment Rights Act.

The United States Court of Federal Claims does not have jurisdiction to adjudicate claims filed, pursuant to USERRA.  *See Dew v. United States*, 192 F.3d 366, 372 (2d Cir. 1999) (holding that USERRA "does not authorize a private [] action against the Federal Government, as an employer, in federal district court; rather, it confers jurisdiction upon the Merit Systems Protection Board").

For this reason, the court has determined that it does not have jurisdiction to adjudicate the claim alleged in the October 18, 2017 Amended Complaint, at 76–82, that Plaintiff suffered discrimination in violation of USERRA.  Accordingly, this claim must be dismissed.  *See* RCFC 12(b)(1).

### e.      Plaintiff's Claim For A Refund Of Taxes Withheld Under The Treasury Offset Program.

Title 26, Subsection 6402(g) limits the jurisdiction of the United States Court of Federal Claims in the context of the TOP, as it provides:

> (g) Review of reductions.—*No court of the United States shall have jurisdiction* to hear any action, whether legal or equitable, brought

13

to restrain or review a reduction authorized by subsection (c), (d)[6], (e), or (f).  No such reduction shall be subject to review by the Secretary in an administrative proceeding.  No action brought against the United States to recover the amount of any such reduction shall be considered to be a suit for refund of tax.

26 U.S.C. § 6402(g) (emphasis added).

Therefore, subsection 6402(g) prohibits all United States courts from adjudicating challenges to reductions authorized by "subsection . . . (d)."  26 U.S.C. § 6402(g).  As relevant here, subsection 6402(d) applies only to the collection of debts owed to federal agencies, including the DFAS.  *See Ivy v. Comm'r of Internal Revenue Serv.*, 877 F.3d 1048, 1050 (D.C. Cir. 2017) (holding that subsection (d) applied to a debt owed to the Department of Education).  In addition, subsection 6402(g) bars judicial review of the IRS applying a tax refund to offset a taxpayer's debt to another federal agency, including tax refunds that concern several tax years.  *See Kaffenberger v. United States*, 314 F.3d 944, 959 (8th Cir. 2003) (holding that a "district court lacked jurisdiction to order a refund of [a taxpayer's] overpayments from [two years] that were credited against . . . liability" that arose in a third year).

For these reasons, the court has determined that it does not have jurisdiction to adjudicate the claims alleged in the October 18, 2017 Amended Complaint, at 50, that the IRS—through the TOP—unlawfully withheld a portion of Plaintiff's tax refund due to satisfy his outstanding debt of $41,591.85 to the DFAS.  Accordingly, this claim must be dismissed.  *See* RCFC 12(b)(1).

---

[6] Subsection 6402(d) provides, in relevant part:

Collection of debts owed to Federal agencies

(1)  In general

Upon receiving notice from any Federal agency that a named person owes a past-due legally enforceable debt (other than past-due support subject to the provisions of subsection (c)) to such agency, the Secretary shall—

(A)  reduce the amount of any overpayment payable to such person by the amount of such debt;

(B)  pay the amount by which such overpayment is reduced under subparagraph (A) to such agency; and

(C)  notify the person making such overpayment that such overpayment has been reduced by an amount necessary to satisfy such debt.

26 U.S.C. § 6402(d).

          **f.**       **Plaintiff's Military Pay Claims.**

The October 18, 2017 Amended Complaint alleges that Plaintiff is entitled to back pay under the Military Pay Act, 37 U.S.C. § 204, for two reasons: (1) Plaintiff was forced to take "excess leave" under duress; and (2) Plaintiff is entitled to back pay for the six days he was incarcerated, but serving on active duty. Compl. at 37–64.

The Military Pay Act is "money-mandating." *Metz v. United States*, 466 F.3d 991, 998 (Fed. Cir. 2006). And, the issue of whether Plaintiff's decision to take "excess leave" was voluntary goes to the merits, not jurisdiction. *See id.* ("[T]he issue of the voluntariness of a plaintiff's separation . . . is no longer a jurisdictional requirement."). Therefore, Plaintiff's claim that he was forced to take "excess leave" in August and September of 2011 may be adjudicated by the court, pursuant to the authority of the Tucker Act.

The court also has determined that the Tucker Act authorizes the court to adjudicate the claim that Plaintiff should have received back pay for the six days when he was incarcerated, but served on active duty. *See Matthews v. United States*, No. 10-648C, 2013 WL 1909989, at *3 (Fed. Cl. May 7, 2013) (determining that "there is no question" that the United States Court of Federal Claims has jurisdiction over a claim for back pay related to time spent in prison), *aff'd*, 750 F.3d 1320 (Fed. Cir. 2014).

The Tucker Act, however, includes a statute of limitations that states: "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. Although the Government's February 23, 2018 Motion For Dismissal does not raise a statute of limitations argument, the time period in Section 2501 is "jurisdictional," and therefore requires "*sua sponte* consideration" by the court. *See John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 132–34 (2008).

"In general, a cause of action against the government accrues when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action." *FloorPro, Inc. v. United States*, 680 F.3d 1377, 1381 (Fed. Cir. 2012) (citations omitted). A claim for back pay "accrues at the time of the plaintiff's discharge." *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003). "That is, the claim accrues at one time, once and for all, on the date of discharge, even though the asserted obligation to pay the plaintiff, on which the claim is based, continues until the end of the plaintiff's enlistment." *Id.* (citations omitted).

The statute of limitation, however, is "not tolled by the claimant's exercise of his right to seek permissive administrative review of his claim." *Id.* at 1312; *see also Chisolm v. United States*, 298 F. App'x 957, 959 (Fed. Cir. 2008) (holding that a claim "for back pay accrued when [the plaintiff] was first denied promotion, not when the Correction Board later denied his applications for review"). Nor is the statute of limitations tolled by "the DFAS asking [a service member] to pay back." *See Bias v. United States*, 722 F. App'x 1009, 1012 (Fed. Cir. 2018).

In this case, Plaintiff voluntarily separated from the Air Force on October 1, 2011. Compl. at 1. By that date, Plaintiff allegedly was required to take "excess leave," albeit under duress, and entitled to receive back pay for the six days that he was incarcerated. Compl. at 39. Plaintiff filed the initial Complaint in the United States Court of Federal Claims on October 2, 2017, but that

was six years and one day after the date of his voluntary separation.  ECF No. 1 at 1.  Section 2501, however, is "not susceptible to equitable tolling."  *John R. Sand*, 552 U.S. 130 at 136; *see also Saline Assocs. No.1 Ltd. P'ship v. United States*, 129 Fed. Cl. 737, 741 (Fed. Cl. 2016) (dismissing a case filed "one day outside the six-year statute of limitations").

For these reasons, the court has determined that the Tucker Act's six-year statute of limitations bars Plaintiff's military pay claims.  Compl. at 37–64.  Accordingly, these claims must be dismissed.  *See* 28 U.S.C. § 2501; *see also* RCFC 12(b)(1).

### g.    Plaintiff's Claim That The Air Force Miscalculated His Voluntary Separation Pay.

The allegation in the October 18, 2017 Amended Complaint that the DFAS miscalculated Plaintiff's VSP arises under 10 U.S.C. § 1175a that provides, in relevant part:

> (a) In General. – Under regulations approved by the Secretary of Defense, the Secretary concerned *may* provide voluntary separation pay and benefits in accordance with this section to eligible members of the armed forces who are voluntarily separated from active duty in the armed forces.
>
> ***
>
> (c) Separation – Each eligible member of the armed forces whose request for separation from active duty under subsection (b)(1)(E) is approved shall be separated from active duty.
>
> ***
>
> (e) Separation Pay and Benefits.—
>
> > (1)   A member of the armed forces who is separated from active duty under subsection (c) *shall be paid* voluntary separation pay in accordance with subsection (g) in an amount determined by the Secretary concerned pursuant to subsection (f).
>
> ***
>
> (f) Computation of Voluntary Separation Pay.— The Secretary concerned shall specify the amount of voluntary separation pay that an individual or defined group of members of the armed forces may be paid under subsection (e)(1).  No member may receive as voluntary separation pay an amount greater than four times the full amount of separation pay for a member of the same pay grade and years of service who is involuntarily separated under section 1174 of this title.

10 U.S.C. § 1175a (emphasis added).

The court's research has not identified any precedential decision by the United States Court of Appeals for the Federal Circuit that addresses whether 10 U.S.C. § 1175a is money-mandating. The plain language of this statute provides that the Secretary of Defense is not obligated to pay VSP.  *See id.* ("the Secretary concerned *may* provide voluntary separation pay") (emphasis added). But, if the Secretary decides to offer VSP, payment of the amount specified by or calculated under applicable regulations is mandatory.  *See id.* ("shall be paid").

For these reasons, the court has determined that Section 1175a is money-mandating and the court has jurisdiction to adjudicate the allegation in the October 18, 2017 Amended Complaint, at 48–50, that the DFAS miscalculated Plaintiff's VSP.

In *Martinez*, the United States Court of Appeals for the Federal Circuit applied the general rule that a cause of action accrues "as soon as all events have occurred that are necessary to enable the plaintiff to bring suit."  333 F.3d at 1303 (holding that a service member knows that he is discharged, "[a]s of the date of his discharge from active duty"); *see also id.* at 1319 ("[T]he accrual of a claim against the United States is suspended, for purposes of 28 U.S.C. § 2501, until the claimant knew or should have known that the claim existed.").

The Air Force approved Plaintiff's application for VSP on July 19, 2011, to be effective on October 1, 2011.  AR A55.  Plaintiff, however, was not paid VSP until November 7 and 8, 2011, and received checks from two different DFAS offices.  AR A26.  Therefore, Plaintiff did not and could not know that the DFAS miscalculated the amount of VSP due until November 7, 2011, at the earliest.

For these reasons, the court has determined that the October 2, 2017 Complaint was timely filed within the six-year statute of limitations, but only as to the claim that the DFAS incorrectly calculated Plaintiff's VSP.  Compl. at 48–50.

## 2. Whether the United States Air Force Miscalculated Plaintiff's Voluntary Separation Pay.

The United States Court of Appeals for the Federal Circuit has held that the court, in resolving a motion for judgment on the administrative record, must "make factual findings from the record evidence as if it were conducting a trial on the record."  *Bannum, Inc. v. United States*, 404 F.3d 1346, 1354 (Fed. Cir. 2005).  The court may not overturn a BCMR decision "unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence."  *Barnick v. United States*, 591 F.3d 1372, 1377 (Fed. Cir. 2010).

DoD regulations in effect at the time of Plaintiff's voluntary separation from the Air Force, provide that VSP is calculated, as follows:

> Compute years of active service according to the formula in subparagraphs 350203.B.1, D, E, and F[7].  Do not count any period

---

[7] Subparagraphs 350203.B.1, D, E, and F state:

B. Compute fractions of years in the following manner:

of prior military service for which the member has received
separation pay, severance pay, or readjustment pay under any
provision of law relating to members of the Uniformed Services.
When computing partial years of service, round the fractional parts
of a year to the nearest 1/10 of 1 percent, or 3 decimal points.  For
example, if the officer has 10 years and 7 months of service, then
the multiplier would be 10.583.

DoD Fin. Mgmt. Reg. 7A, Ch. 35 (June 2010), § 350907, at 35-39.

The parties agree that Plaintiff served in the Air Force from January 9, 2003, to October 1,
2011, for a total of 8 years, 8 months, and 30 days.  Compl. at 1; Gov't Mot. at 4.  Section 350203,
subsection B.1 instructs the Air Force to disregard the 30 days.  Under this first step Plaintiff in
this case served for 8 years and 8 months.  *See* DoD Fin. Mgmt. Reg. 7A, Ch. 35, § 350203, at 35-
20.  But, this regulation next requires the Air Force to count each of the 8 months as "1/12 of a
year."  *Id.*  Then, Section 350907 requires the Air Force to round up "to the nearest 1/10 of 1
percent, or 3 decimal points."  DoD Fin. Mgmt. Reg. 7A, Ch. 35, § 350907, at 35-39.  Therefore,
Plaintiff's active service was for 8.667 years.

In 2011, Plaintiff's monthly basic pay was $5,449.20.  A62.  That amount, multiplied by
twelve, yields an annual salary of $65,390.40.  Plaintiff's annual salary multiplied by 8.667 years
of active service is $566,738.60.  That amount, multiplied by the applicable VSP multiplier
(0.125), yields $70,842.32.

The DFAS used a nearly identical method, but instead of multiplying Plaintiff's annual
salary by 8.667, the DFAS multiplied Plaintiff's monthly salary by 104—the number of full

---

1. Separation Pay. Beginning September 24, 1983, each full
month of military service that is in addition to the number of
full years of active service has been counted as 1/12 of a
year.  Disregard any remaining fractional part of a month.

\*\*\*

D. Count periods of active military service in a Regular or Reserve
Component. Include active duty for training performed on or after
August 10, 1956.

E. Do not include periods of absence without leave, confinement
time awaiting trial that results in a conviction, confinement time
while serving a court-martial sentence, and time lost while not in the
line of duty.  Count time in service to make up for lost time.

F. Do not include service as a cadet or midshipman while in a
Military Service academy or a Reserve Officer Training Program.

DoD Fin. Mgmt. Reg. 7A, Ch. 35, § 350203, at 35-20.

months Plaintiff served in the Air Force. AR A49. The VSP regulations, however, require the Air Force to use a three decimal point multiplier, in determining partial years of service. *See* DoD Fin. Mgmt. Reg. 7A, Ch. 35, § 350907, at 35-39. The DFAS used a monthly multiplier, thereby understating the amount of VSP due Plaintiff by $2.72.

The parties also agree that Plaintiff took "excess leave" from August 17, 2011 to October 1, 2011. Compl. at 22; Gov't Mot. at 9. The DFAS and the BCMR subtracted 45.5 days from Plaintiff's years of active service to determine the amount of VSP due Plaintiff. AR A5. The regulations governing VSP, in effect at the time of Plaintiff's voluntary separation, do not address how to account for "excess leave." Other Air Force regulations, however, refer to excess leave as "no-pay status." Air Force Instruction 36-3003, § 6.8.

The Government argues that, because "excess leave" has no-pay status, it cannot count as active service for purposes of VSP. Gov't Reply at 11–12. Plaintiff counters that "excess leave" should not be deducted from years of active service. Pl. Resp. at 28–29. Plaintiff has the burden to establish that the BCMR's decision was arbitrary, capricious, contrary to law, or unsupported by substantial evidence. Plaintiff has not advanced any reason why his interpretation of the VSP regulations should be preferred, except to say that the Air Force's position is "ludicrous," "fundamentally wrong," and "not a correct statement." Pl. Resp. at 29. Accordingly, the court has determined that Plaintiff has not met his burden to establish that the BCMR's decision violated the applicable legal standard.

In addition, the Air Force also deducted six days for the time Plaintiff spent in a civilian jail prior to his voluntary separation from the Air Force. A62. The VSP regulations, in effect at the time of Plaintiff's service, provide that "confinement time awaiting trial *that results in a conviction*" does not count towards years of active service. *See* DoD Fin. Mgmt. Reg. 7A, Ch. 35, § 350203, at 35-20 (emphasis added). The VSP regulations, however, do not address how jail time that does not end in a trial or conviction should be treated.

The Government argues that Plaintiff's civilian jail time does not qualify as active service, citing 37 U.S.C. § 503 and accompanying regulations. Gov't Mot. at 39. Section 503 states that "[a] member of the . . . Air Force . . ., who is absent without leave or over leave, forfeits all pay and allowances for the period of that absence, unless it is excused as unavoidable." 37 U.S.C. § 503. The DoD regulations, in effect at the time of Plaintiff's service, provide that, in some circumstances, an absence due to civil confinement is excused as unavoidable. *See* DoD Fin. Mgmt. Reg. 7A, Ch. 1 (Jan. 2010), at 1-50 ("Table 1-13"). Table 1-13 states that when a service member is absent from duty "in confinement by civil authorities," and "charges are dismissed or [the service member] is released . . . without trial," and "it is clear that arrest and detention were not due to [the service member's] misconduct," then a service member's absence may "be excused as unavoidable." *Id.* Table 1-13 does not address whether an absence is excused in a situation where charges are dismissed. *Id.*[8]

---

[8] After Plaintiff voluntarily separated from the Air Force, Table 1-13 was revised to resolve these and other ambiguities. *See* DoD Fin. Mgmt. Reg. 7A, Ch. 1 (Apr. 2017), at 1-64; *see also*

By deducting six days from Plaintiff's VSP, the DFAS and the BCMR implicitly treated Plaintiff's jail time as unexcused.  A62.  The October 17, 2018 Amended Complaint alleges that Plaintiff may have engaged in misconduct on several occasions, all directed towards Plaintiff's interaction with his ex-wife, for which he was held in prison.  *See, e.g.*, Compl. at 32 (cyber-stalking); Compl. at 32 (violating a domestic violence protective order); Compl. at 33 (harassment); Compl. at 34 (again violating a domestic violence protective order); Compl. at 35 (identity theft); Compl. at 36 (threats).  Therefore, Plaintiff has not shown that the BCMR's decision to deduct six days from Plaintiff's VSP for time he spent in jail was arbitrary, capricious, contrary to law, or unsupported by substantial evidence.

For these reasons, the court has determined that Plaintiff is not entitled to back pay for the six days he spent in jail during his service in the Air Force.

### 3.    Whether Plaintiff Is Entitled To Equitable Relief.

The October 17, 2018 Amended Complaint requests an injunction ordering the Air Force to award Plaintiff several medals for distinguished service and issuing a declaratory judgment that Plaintiff's debts have been "paid in full."  Compl. at 85–90.

The Tucker Act authorizes the United States Court of Federal Claims to "issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records," only when such an order is "incident of and collateral to" a judgment.  28 U.S.C. § 1491(a)(2).  "Stated another way, the [United States] Court of Federal Claims has no power to grant affirmative non-monetary relief unless it is tied and subordinate to a money judgment."  *James v. Caldera*, 159 F.3d 573, 580 (Fed. Cir. 1998) (citations omitted).

Because the court has determined that Plaintiff is not entitled to any monetary relief in this case, other than the $2.72 from the Air Force's mistake in determining the VSP to which Plaintiff was owed, equitable relief is not "incident of and collateral to" this judgment.  *See* 28 U.S.C. § 1491(a)(2).

---

*Harris*, 868 F.3d at 1379 (holding that the revised Table 1-13 does not excuse an absence due to "pre-conviction confinement").

**IV.     CONCLUSION.**

For these reasons, the Government's February 23, 2018 Motion For Dismissal And Judgment On The Administrative Record is granted in-part and denied in-part.

The Clerk of Court is directed to enter a partial judgment for the Plaintiff in the amount of $2.72 and remand this determination to the Air Force Board for the Correction of Military Records to instruct the DFAS to pay this amount to Plaintiff, and consider any new application Plaintiff may elect to file concerning his claim for disability as of January 10, 2011.

**IT IS SO ORDERED.**

s/ Susan G. Braden<br/>
<strong>SUSAN G. BRADEN</strong><br/>
<strong>Senior Judge</strong>