# In the United States Court of Federal Claims

Pro Se
No. 17-1446
(Filed: June 11, 2019)

| | |
|---|---|
| CHRISTOPHER P. LANGAN,<br><br>  Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>  Defendant. | Keywords: Military Pay; Voluntary Separation Pay; Tax Refund; Statute of Limitations; Motion to Reconsider; Motion for Relief from Judgment; Subject-Matter Jurisdiction |

*Christopher P. Langan*, Goshen, NY, pro se.

*Andrew William Lamb*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, with whom were *Annie W. Morgan*, Major, U.S. Air Force, *Steven J. Gillingham*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, and *Joseph H. Hunt*, Assistant Attorney General, for Defendant.

### OPINION AND ORDER

**KAPLAN, Judge.**

The pro se plaintiff in this case is Christopher P. Langan, a former captain in the United States Air Force. He filed this action on October 2, 2017, asserting a variety of claims for monetary and other relief arising out of his service in—and separation from—the Air Force. The case is currently before the Court on Mr. Langan's motion for reconsideration and/or motion for relief from judgment under Rules 59 and 60(b) of the Rules of the Court of Federal Claims ("RCFC").

Mr. Langan seeks reconsideration of or other relief from a November 20, 2018 decision issued by Judge Susan Braden. In that decision, Judge Braden dismissed the majority of the claims in Mr. Langan's complaint for lack of jurisdiction. The dismissed claims included: claims against defendants other than the United States; claims under the Military Whistleblower Protection Act ("MWPA"), 10 U.S.C. § 1034, and the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301 et seq.; requests for certain equitable relief (including an order directing the Air Force to award him several medals for distinguished service); a tax refund claim; a claim under the Military Pay Act, 37 U.S.C. § 204, seeking disability retirement pay; and claims that Mr. Langan was entitled to receive additional active duty pay for the final months of his service.

On the other hand, Judge Braden concluded that the court did have jurisdiction over Mr. Langan's claim that the Defense Finance and Accounting Service ("DFAS") had miscalculated the amount of voluntary separation pay ("VSP") due to him. But other than correcting a minor arithmetical error in the computation of his VSP—which resulted in partial judgment in the amount of $2.72 for Mr. Langan—Judge Braden granted the government's motion for judgment on the administrative record ("MJAR") as to that claim. Mem. Op. & Order ("Op."), ECF No. 34.

On December 26, 2018, Mr. Langan filed a motion to reconsider or for relief from judgment. Pl.'s Mot. to Seek Review of J. ("Pl.'s Mot."), ECF No. 36. The next day, Judge Braden issued an order directing the government to file a response to the motion. ECF No. 37. The case was transferred to the undersigned on January 23, 2019. ECF No. 42. On February 28, 2019, the government filed its opposition to the motion. Def.'s Opp. to Pl.'s Mot. ("Gov't Resp."), ECF No. 47.

For the reasons that follow, Mr. Langan's motion is **GRANTED-IN-PART** and **DENIED-IN-PART**.

## DISCUSSION

### I. Standard of Review

RCFC 59 states that:

> The court may, on motion, grant a new trial or a motion for reconsideration on all or some of the issues—and to any party—as follows: (A) for any reason for which a new trial has heretofore been granted in an action at law in federal court; (B) for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court; or (C) upon the showing of satisfactory evidence, cumulative or otherwise, that any fraud, wrong, or injustice has been done to the United States.

RCFC 59(a)(1). The Federal Circuit has explained that under this rule "a court, in its discretion, 'may grant a motion for reconsideration when there has been an intervening change in the controlling law, newly discovered evidence, or a need to correct clear factual or legal error or prevent manifest injustice.'" Biery v. United States, 818 F.3d 704, 711 (Fed. Cir. 2016) (quoting Young v. United States, 94 Fed. Cl. 671, 674 (2010)). "A motion for reconsideration under Rule 59(a) must be supported 'by a showing of extraordinary circumstances which justify relief.'" Id. (quoting Caldwell v. United States, 391 F.3d 1226, 1235 (Fed. Cir. 2004)).

Rule 60(b) similarly states that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . or (6) any other reason that justifies relief." "As a remedial provision, Rule 60(b) is to be 'liberally construed for the purpose of doing substantial justice.'" Patton v. Sec'y of Dep't of Health & Human Servs., 25 F.3d 1021, 1030 (Fed. Cir. 1994) (citing 7 James W. Moore & Jo Desha Lucas, Moore's Federal Practice ¶¶ 60.18[8], 60.19 (2d ed. 1993)). At the same time, "[t]he United States Supreme Court . . . has 'cautioned that the Rule should only be applied in extraordinary circumstances.'" Perry v. United

States, 558 F. App'x 1004, 1006 (Fed. Cir. 2014) (quoting Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 864 (1988)) (alterations omitted).

## II. Mr. Langan's Motion

Although styled as a motion for reconsideration under RCFC 59(a)(1) and/or 60(b), a substantial portion of Mr. Langan's supporting memorandum consists of a repetition of the arguments previously presented when his case was before Judge Braden for decision on the government's dispositive motions. It is well established that a motion for reconsideration is not a vehicle for making the same arguments that have already been considered and resolved against the movant in the original opinion. See Four Rivers Invs., Inc. v. United States, 78 Fed. Cl. 662, 664 (2007) (explaining that "motions for reconsideration are not intended to allow a party to reassert arguments that the Court already has considered") (citations omitted). The Court, therefore, will consider only those points set forth in Mr. Langan's motion which take direct issue with the November 18, 2018 decision itself.

### A. Dismissal of Military Pay Claims Based on Statute of Limitations

In his amended complaint, Mr. Langan sought an award of backpay under the Military Pay Act, 37 U.S.C. § 204. He claimed, among other things, that he was entitled to be paid for six days that he spent in jail in April and June of 2011 and for some forty-five days between August and September of 2011 when he took unpaid "excess leave," allegedly "under duress." Judge Braden concluded that these claims were barred by the Tucker Act's six-year statute of limitations. See 28 U.S.C. § 2501. Mr. Langan seeks reconsideration of this determination. Pl.'s Mot. at 2–10.

The Court agrees that this aspect of the decision merits reconsideration because its conclusion was based on clear factual error. Claims for backpay accrue on the date that a service member is discharged or separated from the service. See Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc). Mr. Langan's separation was effective October 1, 2011. Am. Compl. at 31, ECF No. 11. The statute of limitations, accordingly, was set to expire on October 1, 2017, six years later. But the prior decision did not take account of the fact that October 1 fell on a Sunday in 2017. Under RCFC 6, when "computing any time period specified . . . in any statute that does not specify a method of computing time . . . if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Therefore, the six-year limitations period set forth in 28 U.S.C. § 2501 expired on Monday, October 2, 2017—the day Mr. Langan filed his complaint. His claims for backpay were therefore not barred by the statute of limitations.

Nonetheless, on the merits, the Air Force Board for the Correction of Military Records' ("BCMR") decision rejecting Mr. Langan's claims for backpay was neither arbitrary and capricious, nor contrary to law. Therefore, on reconsideration, the Court will vacate the dismissal without prejudice of the backpay claims and instead enter judgment on the administrative record against Mr. Langan.

First, there is no merit to Mr. Langan's contention that the Air Force was required to provide him with active duty pay during the six days in April and June of 2011 when he was

3

incarcerated. As Judge Braden found in the context of addressing Mr. Langan's VSP-related claims, the six days Mr. Langan spent in jail were properly treated as unexcused absences without leave, because—notwithstanding that the charges against him were dismissed—his arrest was based on several acts of misconduct. See Op. at 19–20 (citing DoD Fin. Mgmt. Reg. 7A, Ch. 1 (Jan. 2010), at 1-50, providing that absence due to civil confinement will be excused "if the service member's charges are dismissed and it is clear that his arrest was not due to misconduct") (emphasis supplied). Mr. Langan has not presented the Court with any basis for revisiting that determination either in the context of his claims for active duty pay or his claim for an adjustment of his VSP to reflect the time spent in jail as time in paid duty status. See Pl.'s Mot. at 10–22; 35–40.

As noted, Mr. Langan has also alleged that he is entitled to backpay covering some forty-five days between August and September of 2011 when he agreed to be placed on unpaid "excess leave" so that he could begin attending law school classes in California before his date of separation from the Air Force. Mr. Langan contends that his agreement to take unpaid "excess leave" was made under "duress" resulting from his commanding officer's denial of his request to instead be placed on permissive temporary duty ("PTDY"). Am. Compl. at 43. This claim was properly rejected by the BCMR.

PTDY is "an authorized absence" that a unit commander may (but is not required to) approve in specific circumstances expressly set forth in Air Force regulations. See Air Force Instruction 36-3003, § 12.1 & Table 7 (Oct. 26, 2009). It does not appear to the Court that attending law school classes is one of the circumstances for which PTDY may be provided under the Air Force regulations. But in any event, the decision whether to grant PTDY requests under the regulations in effect when Mr. Langan agreed to take "excess leave" was left to the discretion of unit commanders. See Air Force Instruction 36-3003, § 12.3.9 (Oct. 26, 2009) (explaining that unit commanders "[m]ay deny PTDY requests without referring them to higher-level headquarters"). Mr. Langan cites no regulation or other legal authority that affords service members a legal entitlement to be placed on PTDY under any circumstances.

Further, Mr. Langan's claim that he agreed to be placed on excess leave under "duress" lacks merit as a matter of law. Mr. Langan was not pressured by the Air Force to agree to be placed on excess leave. He chose to be placed on excess leave so that he would be able to start law school on time and before he was discharged from the Air Force. But for his personal decision to begin law school before he was discharged, he would have remained on active duty and continued to receive active duty pay. His argument that he was placed on excess leave involuntarily and under duress is therefore clearly without merit. Cf. Jenkins v. Merit Sys. Prot. Bd., 911 F.3d 1370, 1375 (Fed. Cir. 2019) ("An involuntary retirement is an adverse employment action 'where an agency imposes the terms of an employee's resignation, the employee's circumstances permit no alternative but to accept, and those circumstances were the result of improper acts of the agency.'") (quoting Schultz v. U.S. Navy, 810 F.2d 1133, 1136 (Fed. Cir. 1987)); N. Star Steel Co. v. United States, 477 F.3d 1324, 1334 (Fed. Cir. 2007) (holding that a claim of duress brought by a government contractor "requires a showing that the Government's action was wrongful" and that "circumstances permitted no other alternative") (citations omitted).

4

In short, Mr. Langan's claims related to excess leave and his entitlement to be paid while he was incarcerated should not have been dismissed on statute-of-limitations grounds. Nonetheless, for the reasons set forth above, the government is entitled to judgment on the administrative record as to both claims.

### B. Tax Refund Claims

Mr. Langan argues that Judge Braden failed to address two of his three tax refund claims. The first is a claim that he was wrongfully taxed $1067.42 in tax year 2011 for a TSP transaction that occurred in December of 2011.[1] Although not entirely clear, it appears that Mr. Langan believes that the December 2011 TSP transaction should have been subject to taxation in tax year 2012 because the Form 1099-R reflecting the transaction was not issued until after April 2012, and he did not receive it until after November 2012. Am. Compl. at 64. Mr. Langan's second tax claim is that he is due a refund of $413 for tax year 2011 because the IRS concluded in a May 16, 2017 notice that it should not have treated a cancellation of a debt that Mr. Langan owed to Chase Bank as income to him. Pl.'s Mot. at 42.

The Court agrees that these claims were not addressed in the prior decision.[2] Nonetheless, for the reasons set forth below, it finds that Mr. Langan's tax refund claims must be dismissed under RCFC 12(b)(6) for failure to state a claim.

The statutory framework governing this Court's tax refund jurisdiction is set forth in the prior decision. Op. at 9. To summarize, I.R.C. § 7422(a) requires that a taxpayer file an administrative refund request before he may bring an action in court. I.R.C. § 6511(a) states that—for taxes requiring a return—a taxpayer must file such a request no later than "3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later." And, I.R.C. § 6532(a)(1) states that a taxpayer must file suit within two years of the date the Secretary mails a notice of disallowance covering the disputed claim.

---

[1] "TSP" refers to the Thrift Savings Plan, which is a federal retirement savings program for military personnel and many other federal employees.

[2] The Court notes that, on the other hand, Judge Braden did address Mr. Langan's claim that the Internal Revenue Service unlawfully withheld a portion of his tax refund for tax year 2011 in order to satisfy his outstanding debt of $41,591.85 to DFAS. She concluded that the court lacked jurisdiction over that claim to the extent that it had been "brought to restrain or review a reduction authorized by subsection . . . (d)" of 26 U.S.C. § 6402 authorizing IRS to collect debts owed to other federal agencies. Op. at 13–14 (citing 26 U.S.C. § 6402(g)). And while § 6402(g) also states that it "does not preclude any legal, equitable, or administrative action against the Federal agency or State to which the amount of such reduction was paid," Judge Braden exercised the court's Tucker Act jurisdiction to adjudicate the validity of the underlying debt to DFAS in the context of determining Mr. Langan's military pay claims.

On August 5, 2013, the IRS assessed additional tax against Mr. Langan based on upward revisions to his 2011 taxable income. Am. Compl. Ex. K, at 179, ECF No. 11-3.[3] Those upward revisions were based on unreported income derived from two sources: (1) a cancellation of debt related to Mr. Langan's Chase Bank account; and (2) a taxable distribution of funds from his TSP account. Id. at 180.[4] It appears that Mr. Langan eventually paid the tax for these additional items by check on February 8, 2017. Id. Ex. L, at 200.

On February 21, 2017, Mr. Langan submitted an administrative refund request to the IRS which covered these items. See id. at 212 (notice of disallowance referring to a letter dated "02/21/2017"). On May 16, 2017, the IRS mailed him a notice of disallowance denying the TSP claim but approving the $413 claim related to the debt cancellation by Chase Bank. Id. at 212–14. The notice advised Mr. Langan that "[a] request for adjustment was forwarded for processing by this office and will result in a decrease in income tax of ($413.00-)." Id. at 213.

The Court finds that Mr. Langan's tax refund claims were timely filed for purposes of invoking this Court's jurisdiction. He paid the pertinent taxes on February 8, 2017 and filed an administrative refund claim on February 21, 2017, within the two-year time limit set forth in I.R.C. § 6511(a). The IRS mailed its notice of disallowance on May 16, 2017. Mr. Langan then filed suit on October 1, 2017, within the two-year time limit set forth in I.R.C. § 6532(a)(1).

Turning to the merits, Mr. Langan's TSP-based claim fails for the reasons stated in the IRS's notice of disallowance; namely, that the "taxable year for income is based on when the income is paid or when, in this case, it became income." Am. Compl. Ex. L, at 212. The date on which Mr. Langan received the Form 1099-R that memorialized the transaction does not determine the tax year to which the income is attributable. Mr. Langan has not provided any legal basis for challenging this conclusion.

As for the $413 adjustment the IRS agreed to make to Mr. Langan's tax liability for 2011, the Court understands Mr. Langan to be complaining not that the IRS failed to make the adjustment, but that the adjustment did not result in him receiving a refund check. As the government observes, however, the $413 adjustment was subject to the offset authorized to satisfy Mr. Langan's outstanding debt to the United States arising out of DFAS's overpayment on his VSP. Gov't Mot. at 37, ECF No. 17 (citing ECF No. 11-1 at 34, stating that the Department of Treasury "intended to collect the debt by intercepting any Federal payments made to you, including tax refunds"). Mr. Langan, for his part, does not claim otherwise. Indeed, the record shows that as of February 21, 2018, some eight months after the IRS indicated that it would adjust his tax liability by $413, he still owed DFAS over $12,000. App. to Gov't Mot. at

---

[3] Page numbers cited in the exhibits to the amended complaint correspond with the ECF-stamped numbers at the top of the page.

[4] The IRS appears to have revised its assessment several times between August 5, 2013 and February 8, 2017 at Plaintiff's request. Am. Compl. Ex. L, at 197 (December 12, 2016 revised assessment); id. at 208 (February 13, 2017 revised assessment).

A65, ECF No. 17-1. The Court concludes, therefore, that he has failed to state a claim that he is entitled to a refund of $413.

### C. Moving and Travel Vouchers

Mr. Langan's motion for reconsideration includes allegations that DFAS incorrectly calculated the amount of the reimbursement due to him under a travel voucher and a "personally procured move voucher." Pl.'s Mot. at 40; ECF No. 26-1 at 395–96 (travel voucher); ECF No. 26-1 at 410 (personally procured move voucher). These claims were referenced only in the prayer for relief section of his amended complaint and were not addressed by in the prior decision. There are no facts offered in support of the claims; nor does Mr. Langan identify the relevant provisions of law or regulation upon which he relies. The Court concludes, therefore, that he has failed to establish the prerequisite to this Court's exercise of jurisdiction under the Tucker Act—namely, a money-mandating source of law or regulation. He has also failed to state a claim for relief regarding these items. His request for reconsideration of the prior decision as to these claims therefore lacks merit.

### D. Property Damage

In his amended complaint, Mr. Langan alleged that when he moved from Florida to California, the Air Force movers "caused over $1,400 of damage to [his] property and thus the Defendant owes [him] $1,400." Am. Compl. at 87. He repeats this claim in his motion for reconsideration. Pl.'s Mot. at 41.

As with the voucher claims, the amended complaint provides no explanation of the factual or legal basis for this claim. To the extent that Mr. Langan is alleging the commission of a tort, this Court lacks jurisdiction under the Tucker Act to adjudicate it. See 28 U.S.C. § 1491(a)(1) (conferring jurisdiction to adjudicate "cases not sounding in tort"); U.S. Marine, Inc. v. United States, 722 F.3d 1360, 1372 (Fed. Cir. 2013). And if there is some other basis for the claim based on a money-mandating statute or regulation, Mr. Langan has not identified it. The Court, accordingly, concludes that reconsideration of Judge Braden's dismissal of this claim is not warranted.

### E. Transfer Request

Lastly, Mr. Langan requests that this Court transfer his claims under the MWPA and USERRA, as well as his claim for a refund of taxes withheld under the Treasury offset program, to another court that would have jurisdiction over those claims. Pl.'s Mot. at 44. In support of that request, he cites 28 U.S.C. § 1631, which provides in pertinent part that "[w]henever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court (or, for cases within the jurisdiction of the United States Tax Court, to that court) in which the action or appeal could have been brought at the time it was filed or noticed."

As the court of appeals has observed, "[a] case may be transferred under section 1631 only to a court that has subject matter jurisdiction." Jan's Helicopter Serv., Inc. v. F.A.A., 525 F.3d 1299, 1303 (Fed. Cir. 2008). In this case, no court would have jurisdiction over Mr. Langan's claim under USERRA because he has not exhausted his administrative remedies for

such a claim. See Dew v. United States, 192 F.3d 366, 372 (2d Cir. 1999) (holding that USERRA "does not authorize a private [] action against the Federal Government, as an employer, in federal district court; rather, it confers jurisdiction upon the Merit Systems Protection Board"). Similarly, as described in footnote 2, above, no court has jurisdiction to hear Mr. Langan's claim for a refund of taxes under the Treasury offset program. See 26 U.S.C. § 6402(g). Instead, Mr. Langan is entitled to bring an action against the agency that holds the debt, which he has done in this case (albeit unsuccessfully).

Finally, the MWPA "provides for a comprehensive administrative review scheme over claims of retaliation—specifically, the correction of military records and disciplinary actions as remedies for prohibited actions—but no private right of action for money damages, which could be enforced in the Court of Federal Claims." See Bias v. United States, 722 F. App'x 1009, 1014 (Fed. Cir. 2018); see 10 U.S.C. § 1034(c)–(h) (providing for an investigation by the Inspector General, followed by review by the BCMR, followed by review by the Secretary of Defense). "Indeed," the court of appeals has observed, "no judicial review is available under the MWPA because Congress precluded alternative fora by providing a specific form of redress in the statute." Bias, 722 F. App'x at 1014 (citations omitted). Because there are no other courts that would have jurisdiction over any of these claims, there is no basis to transfer them under 28 U.S.C. § 1631.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to reconsider or for relief from judgment is **GRANTED-IN-PART** and **DENIED-IN-PART**. The Clerk of the Court shall **VACATE** the judgment entered on November 28, 2018 (ECF No. 35). Further, the Clerk shall enter judgment as follows:

The government's motion for dismissal and for judgment on the administrative record is **GRANTED-IN-PART** and **DENIED-IN-PART**. The Clerk is directed to enter judgment on the administrative record for the government as to Plaintiff's claim that he is entitled to backpay covering periods of time that he spent incarcerated or on excess leave. The Clerk is directed to enter judgment on the administrative record for Plaintiff as to his claim that the Air Force miscalculated the amount of his voluntary separation pay insofar as he was entitled to an additional $2.72; in all other respects judgment is entered for the government as to that claim. The case shall be remanded to the BCMR for correction of Plaintiff's records to reflect the proper amount of voluntary separation pay due to him, including the additional $2.72 discussed herein.

In addition:

- Plaintiff's claim that he is entitled to additional reimbursement based on two moving vouchers he submitted in 2011 is **DISMISSED without prejudice for lack of jurisdiction**.

- Plaintiff's claim for an award of $1400 for damage to his personal property during his move from Florida to California in 2011 is **DISMISSED without prejudice for lack of jurisdiction**.

- Plaintiff's claim that he is entitled to a refund of $1480.42 for tax year 2011 is **DISMISSED for failure to state a claim**.

- Plaintiff's claims against defendants other than the United States are **DISMISSED without prejudice for lack of jurisdiction**.

- Plaintiff's claims under the Uniformed Services Employment and Reemployment Rights Act are **DISMISSED without prejudice for lack of jurisdiction**.

- Plaintiff's claims under the Military Whistleblower Protection Act are **DISMISSED without prejudice for lack of jurisdiction**.

- Plaintiff's claim that he is entitled to disability retirement pay is **DISMISSED without prejudice for lack of jurisdiction**.

- Plaintiff's claim that he is entitled to a refund of taxes withheld under the Treasury offset program is **DISMISSED without prejudice for lack of jurisdiction**.

- Plaintiff's request that this Court transfer his claims under the Military Whistleblower Protection Act and the Unformed Services Employment and Reemployment Rights Act, as well as his claim for a refund of taxes withheld under the Treasury offset program, is **DENIED**.

**IT IS SO ORDERED.**

_____
ELAINE D. KAPLAN
Judge